UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PAUL A. BOYNE,

                            Plaintiff,

v.                                                          8:18-CV-0536
                                                            (GTS/DJS)
RICHARD BLAIR MEYER, Family Court
Judge of Essex County; and ADAM D.
MICHELINI, Family Court Judge of Washington
County,

                            Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

PAUL A. BOYNE
  Plaintiff, *Pro Se*
8105 Creekview Drive
Springfield Virginia 22153

HON. BARBARA UNDERWOOD                               KYLE W. STURGESS, ESQ.
Attorney General for the State of New York          Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

         Currently before the Court, in this civil rights action filed by Paul A. Boyne ("Plaintiff")

against Richard Blair Meyer and Adam D. Michelini ("Defendants") pursuant to the Americans

with Disabilities Act ("ADA") and the Fourteenth Amendment of the United States Constitution,

are the following nine motions: (1) Defendants' motion to dismiss Plaintiff's Complaint for (a)

lack of subject-matter jurisdiction due to the doctrine of absolute judicial immunity pursuant to

Fed. R. Civ. P. 12(b)(1), and (b) failure to state a claim upon which relief can be granted

pursuant to Fed. R. Civ. P. 12(b)(6); (2) Plaintiff's first motion to strike Defendants' motion and to stay the proceedings; (3) Plaintiff's motion for Article III review; (4) Plaintiff's motion for a preliminary injunction; (5) Plaintiff's second motion to strike Defendants' motion and to strike the orders of United States Magistrate Judge Daniel J. Stewart; (6) Plaintiff's motion for immediate remedial action; (7) Plaintiff's motion to strike Defendants' opposition memorandum of law; (8) Plaintiff's motion for declaratory judgment; and (9) Plaintiff's motion for sanctions. (Dkt. Nos. 9, 13, 14, 15, 18, 20, 21, 22, 23.)  For the reasons set forth below, Defendants' motion is granted and Plaintiff's motions are denied.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint asserts five causes of action.  (Dkt. No. 1 [Pl.'s Compl.].)  First, Plaintiff claims that Defendants deprived him of his civil rights under 42 U.S.C. § 1983 and violated his rights under the ADA by (a) characterizing him as a "sad and sympathetic figure" when refusing to grant him visitation rights, (b) ordering him to submit to a psychological evaluation based on a perception that he had a disability, and (c) requiring him to appear in person "for the purpose of apologizing to the court for inartful pleadings and for the plaintiff to retract such pleadings."  (*Id.* at 2, 4-6.)

Second, Plaintiff claims that Defendants violated his due process and equal protection rights by applying full faith and credit to an out-of-state custody order, which amounted to a denial of access to the court.  (*Id.* at 6.)

Third, Plaintiff claims that Defendant Meyer violated his due process and equal protection rights by (a) making threats of incarceration, (b) demanding apologies, (c) demanding

that Plaintiff withdraw "properly filed but inartfully worded pleadings," and (d) departing from the liberal pleading standards applicable to non-attorneys.  (*Id.*)

Fourth, Plaintiff claims that Defendants violated his due process and equal protection rights by failing to apply the New York Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), based on their decision to ignore the parties' voluntary submission to the jurisdiction of the New York courts.  (*Id.* at 2, 7.)

Fifth, and last, Plaintiff claims that Defendants violated his due process and equal protection rights by denying him visitation of his minor daughter.  (*Id.* at 7.)

**B.     Parties' Briefing on Defendants' Motion to Dismiss**

**1.     Defendants' Memorandum of Law**

Generally, Defendants move to dismiss Plaintiff's Complaint for five reasons.  (Dkt. No. 9, Attach. 2 at 7-22 [Defs.' Mem. of Law].)  First, Defendants argue that Plaintiff's claims are barred by the doctrine of absolute judicial immunity based on the fact that those claims arise from actions taken by Defendants in their official judicial capacities during various state child custody proceedings.  (*Id.* at 7-11.)

Second, Defendants argue that, in the alternative to being dismissed based on the doctrine of absolute judicial immunity, Plaintiff's ADA claims must be dismissed for failure to state a claim upon which relief can be granted.  (*Id.* at 10-17.)  More specifically, Defendants argue that the ADA does not permit suit against individuals (even in their official capacities) and that Plaintiff's Complaint appears to assert ADA claims against Defendants only in their personal capacities.  (*Id.* at 11-13.)  Defendants argue that, nonetheless, Plaintiff has failed to state a claim for ADA discrimination because (a) his Complaint contains only vague allusions to a perceived

disability that are insufficient to plausibly suggest that he is a qualified individual under the ADA and he does not allege having an actual disability, (b) his Complaint does not allege that he was denied participation in or access to the court, and (c) his Complaint does not contain any factual allegations plausibly suggesting a discriminatory animus or any adverse consequence of any alleged discriminatory animus. (*Id.* at 13-15.) Defendants also argue that Plaintiff has failed to state a claim for ADA retaliation because he (a) has not alleged facts plausibly suggesting he is a qualified individual or suffered a material adversity as a result of Defendants' actions as discussed previously, and (b) he has failed to allege a causal connection between any protected activity and Defendants' actions. (*Id.* at 15-17.)

Third, Defendants argue that, in the alternative to being dismissed based on the doctrine of absolute judicial immunity, any constitutional claim asserted against them in their official capacities are barred by the doctrine of sovereign immunity. (*Id.* at 17-18.)

Fourth, Defendants argue that, notwithstanding judicial or sovereign immunity, Plaintiff's constitutional claims must be dismissed for failure to state a claim upon which relief can be granted. (*Id.* at 19-21.) More specifically, regarding Plaintiff's due process claim, Defendants argue that Plaintiff has failed to plead facts plausibly suggesting how he was deprived of notice or a hearing with respect to any of the court's decisions or actions, or that he was denied any post-deprivation remedy such as seeking a rehearing or an appeal. (*Id.* at 19.) Regarding Plaintiff's equal protection claim, Defendants argue that Plaintiff has not alleged facts plausibly suggesting any similarly situated person who was treated differently than him and has not specified the nature of any alleged impermissible considerations or discriminatory animus. (*Id.* at 20.)

Fifth, and last, Defendants argue that any attempt by Plaintiff to use this federal lawsuit as a means for relitigating the issues raised and decided in the Family Court decisions is barred by the *Rooker-Feldman* doctrine.  (*Id.* at 21-22.)

### 2.  Plaintiff's Opposition Memorandum of Law

Generally, Plaintiff asserts ten arguments in opposition to Defendants' motion.  (Dkt. No. 24, at 1-7 [Pl.'s Opp'n Mem. of Law].)   First, Plaintiff argues that allowing dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6) violates 28 U.S.C. § 2072 (which confers on the United States Supreme Court the power to proscribe rules of procedure), although, through citation of case law, Plaintiff acknowledges that federal courts have the power to decide matters of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  (*Id.* at ¶ 1.)

Second, Plaintiff argues that ADA claims are not barred by the doctrine of judicial immunity because (a) Congress did not exempt judges from compliance with the ADA, and (b) violating the ADA is not a duty of a state official.  (*Id.* at ¶ 2.)

Third, Plaintiff argues that Congress did not create any exceptions to protect actions by a public entity for discrimination, retaliation, or coercion.  (*Id.* at ¶ 3.)

Fourth, Plaintiff argues that this action is properly brought against a public entity acting in an official capacity, and that the fact the New York Attorney General might be able to substitute other entities or individuals in this action for the Defendants is not grounds for dismissal.  (*Id.* at ¶ 4.)

Fifth, Plaintiff argues that the Complaint is sufficient to state a cause of action upon which relief can be granted because it gives fair notice as to the grounds on which the claims rest.  (*Id.* at ¶ 5.)

Sixth, Plaintiff argues that the UCCJEA governs jurisdiction in his child custody proceedings because his constitutional claims arise from his crossing of state lines. (*Id.* at ¶ 6.)

Seventh, Plaintiff argues that, when compared to other courts, the Washington County Family Court (through Defendants) created a situation of unequal treatment of children and parents and thereby violated his equal protection rights; in support of this argument, Plaintiff points to a case in which a different federal court ruled that "children must be expeditiously reunited with fit parents" as the point of comparison. (*Id.* at ¶ 7.)

Eighth, Plaintiff argues that Defendants' allegation that Plaintiff has exhibited anti-Semitism against Defendant Meyer is a deprivation of his freedom of expression and "in affront to zealous advocacy within an adversarial system." (*Id.* at ¶ 8.) Plaintiff additionally argues that he is being unfairly treated because other cases have applied "Catholic Church doctrine" and other Christian authority to preserve parent-child rights, while he has been subjected to "Talmudic doctrine" that is less favorable to him. (*Id.*)

Ninth, Plaintiff argues that the *Rooker-Feldman* doctrine is not applicable because the current federal case involves claims of ADA violations, while his state court proceedings were related to child custody. (*Id.* at ¶ 9.)

Tenth, and last, Plaintiff argues that Defendants' ordering of psychological evaluations in connection with his custody proceedings was a violation of his rights under the ADA because it was based on Defendants' perception that Plaintiff had an emotional or mental disability and was used as a pretense for their discrimination against Plaintiff, "the disliked parent." (*Id.* at ¶ 10.)

### 3.        Defendants' Reply Memorandum of Law

Generally, Defendants assert five arguments in reply to Plaintiff's opposition.  (Dkt. No. 25, at 2-8 [Defs.' Reply Mem. of Law].)  First, Defendants argue that there is no merit to Plaintiff's argument that jurisdictional challenges cannot be heard in conjunction with challenges to the sufficiency of a pleading.  (*Id.* at 2-3.)

Second, Defendants argue that they are entitled to judicial immunity.  (*Id.* at 3-4.)  More specifically, in response to Plaintiff's second and third arguments, Defendants argue that Congress' abrogation of the states' sovereign immunity under the ADA has no effect on the availability of judicial immunity because they are two separate and distinct doctrines.  (*Id.*)

Third, in response to Plaintiff's fourth argument, Defendants argue that Plaintiff has failed to identify in the Complaint whether he is suing Defendants in their personal or official capacities, and argue again that, under in either capacity, Plaintiff's arguments would be barred by either the scope of the ADA or the doctrine of sovereign immunity.  (*Id.* at 4-5.)

Fourth, in response to Plaintiff's fifth and seventh arguments, Defendants argue that Plaintiff's allegations are insufficient to state a cause of action upon which relief can be granted. (*Id.* at 6-7.)  More specifically, Defendants argue that (a) Plaintiff did not provide any factual allegations as to what his disability (or perceived disability) actually is, what functions that disability affects or is perceived to affect, or any link between Defendants' actions and that disability (or perceived disability), (b) Plaintiff does not allege a similarly situated person or a connection between his Family Court proceedings and a discriminatory consideration by the court, and (c) Plaintiff does not allege how he was denied due process in the Family Court proceedings.  (*Id.*)

Fifth, and last, Defendants argue that *Montoya v. Davis*, 156 A.D.3d 132 (N.Y. App. Div., 3d Dep't. 2017), which is cited repeatedly by Plaintiff, does not provide a basis for opposing dismissal of his claims because it does not address any issues pertinent to the issues in this case.  (*Id.* at 8.)

**C.    Plaintiff's Motions**

**1.    Plaintiff's First Motion to Strike Defendants' Motion and to Stay Proceedings**

On June 21, 2018, Plaintiff filed a combined motion to strike Defendants' motion and motion to stay proceedings pending review by the United States Department of Justice ("DOJ"). (*See generally* Dkt. No. 13.)  In his motion to strike, Plaintiff generally argues that Defendants' motion is legally insufficient, and more specifically asserts the following six arguments: (1) judicial immunity does not apply because attaching "a discriminatory label" to a litigant is not a judicial function or a function of judicial discretion; (2) his suit is against a public entity, not individuals, because Defendants are elected officials of the New York State Family Court; (3) Defendants' arguments regarding the ADA are legally insufficient because the facts alleged show bias and ADA violations; (4) Defendants misinterpret the law related to sovereign immunity; (5) Plaintiff has, contrary to Defendants' assertion, alleged similarly situated persons who were treated differently because not all Family Court litigants are ordered to undergo a psychological evaluation; and (6) Defendants' argument as to the *Rooker-Feldman* doctrine is not legally sufficient because he is not relitigating any issues from the Family Court proceedings. (Dkt. No. 13, Attach. 1, at 1-6.)

Plaintiff additionally argues that Defendants' motion should be stricken from the record based on the inclusion of "immaterial, impertinent, or scandalous matter," specifically a notation

in Defendants' memorandum of law that Plaintiff had made anti-Semitic remarks about Defendants in the past. (Dkt. No. 13, Attach. 2, at 1-2.) Plaintiff does not argue that Defendants' characterization is inaccurate, but rather that he had the right to respond in kind in the face of the insults and "name calling" directed at him by Defendants. (*Id.*) Plaintiff suggests that punishing him for insulting language while not punishing Defendants is "anti-goy, prejudicial, and discriminatory." (*Id.*)

In his motion to stay, Plaintiff argues that the DOJ has been notified of this matter and that, as a result, the Court has a duty to stay consideration of Defendants' motion until the DOJ has had an opportunity to conduct a review and determine whether it wishes to intervene in the case. (Dkt. No. 13, at 1-2.)

### 2. Plaintiff's Motion for Article III Review

On June 21, 2018, Plaintiff filed a motion requesting this Court to review the Orders issued by Magistrate Judge Stewart that (a) denied Plaintiff access to electronic filing absent a showing of good cause, and (b) barred him from contacting the Court and the Clerk's Office by telephone, specifying that all communication should be in writing and addressed to the Clerk of the Court. (Dkt. No. 14.)

### 3. Plaintiff's Motion for a Preliminary Injunction

On June 21, 2018, Plaintiff filed a motion seeking issuance of a preliminary injunction against Defendant Meyer that would prohibit him from any further involvement in Plaintiff's pending Family Court case. (Dkt. No. 15, at 1-3.) More specifically, Plaintiff argues that Defendant Meyer has displayed bias against Plaintiff by calling him a "sad and sympathetic figure" in a written decision and by making statements in the decision mocking Plaintiff, and that

Defendant Meyer's role as judge in that case will prevent Plaintiff from receiving a fair trial. (*Id.* at 2-3.)

### 4. Plaintiff's Second Motion to Strike Defendants' Motion and to Strike the Orders of Magistrate Judge Stewart

On July 5, 2018, Plaintiff filed a second motion to strike Defendants' motion and to strike the Magistrate Judge's Orders on the basis of continuing discriminatory conduct. (Dkt. No. 18, at 1-2.) Plaintiff additionally argues that the pleadings of the Attorney General's Office are "merely delay tactics and *pro se* abuse." (*Id.*) Finally, Plaintiff also argues that Defendant Meyer denied him a "reasonable and customary accommodation" to appear at a proceeding by telephone despite Plaintiff's having notified him that he had a "disability/impairment preventing travel from Virginia to New York." (Dkt. No. 18, at 3-4.)

### 5. Plaintiff's Motion for Immediate Remedial Action

On July 9, 2018, Plaintiff filed a motion requesting an order for immediate remedial action to cure Defendants' alleged non-compliance with the ADA. (Dkt. No. 20, at 1-3.) Plaintiff again argues that being subjected to orders for a psychological evaluation as part of his Family Court proceedings is discriminatory and violates his rights. (*Id.*)

### 6. Plaintiff's Motion to Strike Defendants' Opposition Memorandum of Law

On July 13, 2018, Plaintiff filed a motion to strike Defendants' opposition memorandum of law related to his motions filed on June 21, 2018. (Dkt. No. 21, at 1-3.) Plaintiff argues that Defendants' memorandum is irrelevant and legally insufficient because "there is no federal cause of action nor is there a defense" that can be asserted against Plaintiff for using language that Defendants characterize as anti-Semitic. (*Id.*) Plaintiff argues that the Court cannot review his

"zealous prose" in this ADA-based action, and that his "mere zealous advocacy and pointed prose" is "simply part of the adversarial process in the American system." (*Id.* at 1-2.) Finally, Plaintiff again argues that he has been discriminated against by Defendants' application of unfavorable "Talmudic" law to his Family Court case rather than the "Christian doctrine" that has been applied by other courts. (*Id.* at 2.)

### 7.     Plaintiff's Motion for Declaratory Judgment

On July 13, 2018, Plaintiff filed a motion for declaratory judgment to "resolve the uncertainty of rights of the litigants in the instant case caused by the contradictory pleadings of the State of New York." (Dkt. No. 22, at 1-3.) More specifically, Plaintiff points to a case from the Western District of Washington[1] in which he asserts New York Attorney General Barbara Underwood "cites Catholic Church doctrine" to support arguments that parent-child separation is prohibited absent parental unfitness, while, in the current case, she argues that parental separation rests solely on judicial discretion and the unqualified opinions of third parties. (*Id.* at 1-2.) Plaintiff argue that the contradictory positions in these two cases creates two separate and unequal classes of children and parents and leads to uncertainty as to what the standard is for determining parental rights. (*Id.* at 2-3.)

### 8.     Plaintiff's Motion for Sanctions

On July 13, 2018, Plaintiff filed a motion seeking the imposition of sanctions against Defendants' counsel under Fed. R. Civ. P. 11(c) based on representations made in Defendants' motion to dismiss. (Dkt. No. 23, at 1.) More specifically, Plaintiff argues that Defendants'

---

[1]     The Court notes that it was unable to determine the specific case Plaintiff is referring to based on the information provided. (*See* Dkt. No. 24, at 5 [Pl.'s Opp'n Mem. of Law] [citing "WDW 2:18-cv-939, State of Washington, et al, v. United States"].)

counsel filed the motion to dismiss for the improper purposes of harassing Plaintiff, unnecessarily delaying proceedings, needlessly increasing the cost of litigation, presenting frivolous and unwarranted claims contrary to the ADA and without consulting the DOJ, presenting factual contentions lacking evidentiary support, and presenting unwarranted denials of factual contentions.  (*Id.*)  Plaintiff also generally argues that Defendants' motion is "a purposeless effort to use a court rule to thwart civil rights protections enacted with specificity by Congress."  (*Id.* at 2.)

### D. Defendants' Opposition to Plaintiff's First Motion to Strike and Stay Proceedings, Motion for Article III Review, and Motion for Preliminary Injunction

In opposition to Plaintiff's June 21, 2018, motions, Defendants assert three arguments. (Dkt. No. 17, at 2-11 [Defs.' Opp'n Mem. of Law].)  First, Defendants argue that Plaintiff's motion to strike their motion and to stay proceedings should be denied as baseless.  (*Id.* at 2-5.) As to Plaintiff's motion to strike, Defendants argue that (a) their motion to dismiss shows that both the motion and the arguments asserted have a legal basis, and (b) the evidence clearly shows that Plaintiff made anti-Semitic statements about Defendants that are relevant to the current action and, in any event, bringing attention to those remarks is not so impertinent or scandalous to merit striking their entire motion.  (*Id.* at 3-4.)  As to the motion to stay proceedings, Defendants argue that there is no evidence to indicate that the DOJ has any interest in this case or intends to intervene, given that it is a routine challenge to the sufficiency of a pleading involving well-established doctrines and law.  (*Id.* at 4-5.)

Second, Defendants argue that Magistrate Judge Stewart's Orders should be left undisturbed because they are neither clearly erroneous nor contrary to the law.  (*Id.* at 5-7.)

Third, Defendants argue that Plaintiff is not entitled to a preliminary injunction because (a) he has not identified any ongoing or anticipated injury to be relieved of, (b) federal courts are not permitted to grant injunctive relief to intervene in state judicial functions except in extraordinary exigencies, and (c) even absent abstention, Plaintiff offers no authority to support his contention that a judge must recuse himself simply because he previously presided over proceedings involving a party, and this federal action does not itself create a conflict requiring recusal. (*Id.* at 7-11.)

## II. LEGAL STANDARD GOVERNING A MOTION TO DISMISS

### A. Legal Standard Governing Motions to Dismiss for Lack of Subject-Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1)

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

**B.      Legal Standard Governing Motions to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6)**

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211 nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J.) (adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212 n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212 n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212 n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213 n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

III.    ANALYSIS

A.    **Whether Plaintiff's Claims Are Barred By the Doctrine of Judicial Immunity**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 9, Attach. 2, at 7-11 [Defs.' Mem. of Law]; Dkt. No. 25, at 3-4 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

It is well established that judicial officers are immune from suit based on their judicial acts.  "Like other forms of official immunity, judicial immunity is an immunity from suit, not just from ultimate assessment of damages."  *Mireles v. Waco*, 502 U.S. 9, 11 (1991).  "[J]udicial immunity is not overcome by allegations of bad faith or malice," and a judge cannot "be deprived of immunity because the action he took was in error . . . or was in excess of authority."  *Mirales*, 502 U.S. at 11, 13.  Judicial immunity can be overcome only in two circumstances: (1) where the judge engages in nonjudicial actions, i.e., actions not taken in the judge's judicial capacity; and (2) where the actions, though judicial in nature, are taken in the complete absence of all jurisdiction.  *Id.* at 11-12.  A judicial action is "a function normally performed by a judge, and to the expectation of the parties."  *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).  "The Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature."  *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009).  An action is in absence of all jurisdiction when the court has no "statutory or constitutional power to adjudicate the case."  *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009)  Additionally, 42 U.S.C. § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted

unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. §

1983. Courts within this circuit have specifically found that judicial immunity extends to claims

brought pursuant to the ADA. *See Brooks v. Onondaga Cnty. Dep't. of Children & Family

Servs.*, 17-CV-1186, 2018 WL 2108282, at *4 (N.D.N.Y. Apr. 9, 2018) (Dancks, M.J.) Report

and Recommendation adopted by 2018 WL 2108187 (N.D.N.Y. May 7, 2018) (Sharpe, J.)

(collecting cases).

Plaintiff complains about a number of actions taken by Defendants: (a) ordering Plaintiff

on numerous occasions to submit to a psychological examination as part of Family Court

proceedings; (b) accepting the Family Court decree from a Connecticut state court pursuant to

the Full Faith and Credit Clause of the United States Constitution; (c) denying Plaintiff's request

for a copy of his "psychological appointee's letter of 1 March 2017 so declining the

appointment"; (d) writing a letter to the Connecticut Superior Court regarding jurisdiction; (e)

rebuking Plaintiff during proceedings; (f) calling Plaintiff a "sad and sympathetic figure" in a

written decision; (g) applying an improper legal standard; (g) denying discovery and disclosure

requests; (h) relying on perceived disabilities to deny Plaintiff visitation of his daughter; (i)

requiring Plaintiff to appear in court to apologize for and retract certain improper pleadings; and

(j) denying Plaintiff's motion for declaratory judgment. (Dkt. No. 1, at 3-5 [Pl.'s Compl.].)

The Court finds that all of the above-described actions constitute judicial actions because

they were related to the process of adjudicating Plaintiff's Family Court case. Just because

Plaintiff alleges that these actions were improper or violated his rights under the ADA does not

change the fact that actions such as managing discovery, denying motions and requests, writing

decisions, holding hearings, and making legal findings are all squarely judicial in nature.

Additionally, there is no indication that Defendants acted in the absence of jurisdiction. Rather, the evidence presented shows that Defendant Meyer sent a letter to Connecticut Superior Court Judge Jose A. Suarez for the express purpose of resolving any issues that might have prevented the Washington County Family Court from exercising appropriate jurisdiction over the case. (Dkt. No. 9, Attach. 1, at 25-26, 30.) Given the Family Court's statement that Connecticut agreed to "relinquish jurisdiction over this matter pursuant to the UCCJEA to the State of New York," the evidence supports a finding that Defendants had jurisdiction over the proceedings in which the relevant actions occurred. (*Id.* at 30.)

Lastly, the Court is not persuaded by Plaintiff's apparent attempt to argue that judicial immunity does not apply to his claims under 42 U.S.C. § 1983 based on the alleged unavailability of declaratory relief. Specifically, Plaintiff alleges that Defendant Meyer's denial of a motion for declaratory judgment on or about April 26, 2018, made declaratory relief unavailable. (Dkt. No. 1, at 5 [Pl.'s Compl.].) However, there is a difference between being denied a declaratory judgment and the unavailability of declaratory relief. *See Jones v. Tarantino*, 15-CV-5211, 2016 WL 5173258, at *3 (E.D.N.Y. Sept. 21, 2016) ("Declaratory relief against a judge for actions taken within his or her judicial capacity is ordinarily available by appealing the judge's order."); *accord, Kneitel v. Palos*, 15-CV-2577, 2015 WL 3607570, at *8 (E.D.N.Y. June 8, 2015). Plaintiff has not shown that declaratory relief was actually unavailable and therefore has not established a reason to exempt Defendants from the protection of the doctrine of judicial immunity in this case.

For all of the above reasons, the Court grants Defendants' motion to dismiss the Complaint due to lack of subject-matter jurisdiction.

In the alternative, even if judicial immunity did not apply, the Court would still grant Defendants' motion to dismiss on the basis of Plaintiff's failure to state a claim upon which relief can be granted for the reasons stated in Defendants' memoranda of law. (Dkt. No. 9, Attach. 2, at 11-22 [Defs.' Mem. of Law]; Dkt. No. 25, at 4-8 [Defs.' Reply Mem. of Law].) In particular, the Court is persuaded that Plaintiff has not alleged facts plausibly suggesting that he is a qualified individual under the ADA; Plaintiff's allegations that Defendants' orders that he undergo psychological evaluations establish that Defendants perceived him to have a disability are insufficient in that he does not allege what disability Defendants allegedly perceived Plaintiff to have. Plaintiff also has not plausibly alleged that he was denied from participating in the court proceedings or was otherwise discriminated or retaliated against on the basis of a perceived disability. As to the constitutional claims, Plaintiff has not alleged facts plausibly suggesting that he was deprived of any right without adequate process (as to his due process claims), or that similarly situated persons were treated in a different manner than him by the Family Court. Although Plaintiff relies heavily on a select number of state and federal cases that he believes to be determinative, these cases as a whole either do not present factually similar situations to Plaintiff's claims or are simply not relevant to the issues at hand.

Additionally, to the extent Plaintiff's Second, Fourth, and Fifth claims allege that the Family Court erred in affording full faith and credit to the Connecticut court's custody determination and in denying him visitation rights for his minor daughter, the Court finds that these claims are an attempt to invalidate state court determinations that is barred by the *Rooker-Feldman* doctrine. *See Sykes v. Mel S. Harris & Assocs., LLC*, 780 F.3d 70, 94 (2d Cir. 2015) (noting that the *Rooker-Feldman* doctrine applies when [a] the plaintiff lost in state court, [b] the

plaintiff complains of injuries caused by a state court judgment, [c] the plaintiff invites district court review and rejection of that judgment, and [d] the state court decision was rendered before the district court proceedings commenced).

**B.      Whether Plaintiff Is Entitled to a Preliminary Injunction**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' opposition memorandum of law.  (Dkt. No. 17, at 7-11 [Defs.' Opp'n Mem. of Law].)  Generally, in order to show entitlement to a preliminary injunction, a party must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 34 (2d Cir. 2010) (quoting *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 19 [2008]).  Plaintiff claims that the evidence establishes that Defendant Meyer is biased against him; but he has not presented any facts or arguments even suggesting (let alone establishing) that he will suffer irreparable harm if Defendant Meyer continues as the judge presiding over his Family Court case, or that he is likely to succeed on the merits of his claims.  (Dkt. No. 15, at 1-3.)  The Court therefore denies Plaintiff's motion for a preliminary injunction.

**C.      Whether Magistrate Judge Stewart's Orders Are Proper**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' opposition memorandum of law.  (Dkt. No. 17, at 5-7 [Defs.' Opp'n Mem. of Law].)  As Defendants note, the Court considers objections to the non-dispositive orders of a magistrate judge by determining whether those orders are clearly

erroneous or contrary to law.  Fed. R. Civ. P. 72(a).  Given that Plaintiff repeatedly called chambers and the Clerk's Office to engage in unhelpful and sometimes abusive and disrespectful diatribes, the Court finds nothing clearly erroneous in the Order barring Plaintiff from communicating with the Court by telephone; Plaintiff is still permitted to communicate with the Clerk's Office by sending his written communications to the Clerk of the Court.  Likewise, the Court finds nothing clearly erroneous in the Order denying access to electronic filing.  Plaintiff has already filed eight motions of various types in response to a single motion to dismiss.  Given Plaintiff's conduct thus far in this litigation, the Court cannot say that allowing Plaintiff unfettered access to electronic filing would serve the interests of judicial efficiency.  The Court therefore denies Plaintiff's motion.

### D. Whether Defendants' Counsel Should Be Subject to Sanctions

After carefully considering the matter, the Court answers this question in the negative.  Specifically, the Court finds that Defendants' motion, which raises both jurisdictional and substantive challenges to Plaintiff's Complaint, has a basis in the law and fact, is not frivolous, and was made for a valid purpose rather than with the intent to harass Plaintiff or delay proceedings.  The Court finds that Defendants' counsel has not engaged in any conduct with regard to the motion to dismiss that would warrant the imposition of sanctions.  *See* Fed. R. Civ. P. 11(b) (indicating that sanctionable conduct includes [1] presenting a paper for an improper purpose, [2] presenting frivolous arguments unsupported by law, [3] presenting factual contentions lacking evidentiary support, and [4] denying factual contentions where denial is not warranted on the evidence).  The Court therefore denies Plaintiff's motion for sanctions.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 9) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's first motion to strike Defendants' motion and to stay proceedings (Dkt. No. 13) is **<u>DENIED</u>** as moot; and it is further

**ORDERED** that Plaintiff's request for Article III review of Magistrate Judge Stewart's Orders (Dkt. No. 14) is **<u>DENIED</u>** as moot; and it is further

**ORDERED** that Plaintiff's motion for preliminary injunction (Dkt. No. 15) is **<u>DENIED</u>**; and it is further

**ORDERED** that Plaintiff's second motion to strike Defendants' motion and to vacate Magistrate Judge Stewart's Orders (Dkt. No. 18) is **<u>DENIED</u>** as moot; and it is further

**ORDERED** that Plaintiff's motion for immediate remedial action (Dkt. No. 20) is **<u>DENIED</u>** as moot; and it is further

**ORDERED** that Plaintiff's motion to strike Defendants' opposition memorandum of law (Dkt. No. 21) is **<u>DENIED</u>** as moot; and it is further

**ORDERED** that Plaintiff's motion for declaratory judgment (Dkt. No. 22) is **<u>DENIED</u>** as moot; and it is further

**ORDERED** that Plaintiff's motion for sanctions (Dkt. No. 23) is **<u>DENIED</u>**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: August 14, 2018
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge